IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| D. T. A., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 5:20-cv-00318-TES-CHW |
| : | |
| COMMISSIONER OF : | Social Security Appeal |
| SOCIAL SECURITY, : | |
| : | |
| Defendant. : | |
| : | |

**ORDER**

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits. Because the ALJ did not adequately explain the weight accorded to the medical evidence, and because it is not clear that substantial evidence supports the ALJ's ruling, it is **RECOMMENDED** that Plaintiff's case be **REMANDED** to the Commissioner for a reevaluation of the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff DTA applied for Title II and Title XVI benefits in March 2016, alleging disability beginning in October 2014, due primarily to congestive heart failure and fluid retention in the legs. (R. 54, 123). After Plaintiff's applications were denied initially and on reconsideration at the state-agency level of review (Exs. 1A-8A), Plaintiff requested and received further review before an administrative law judge ("ALJ").

In February 2019, the ALJ held a hearing at which Plaintiff testified that she performed part-time work for one hour a day, three days a week, for the Baldwin County Board of Education. By Plaintiff's description, this work consisted of sitting with cleaning supplies and keeping note

1

of the persons who took supplies. (R. 55-56). Plaintiff performed this work because "I had to have some money to have somewhere to stay." (R. 54). When asked why she could not perform full-time work, Plaintiff answered: "It's these legs – my legs are real bad. I've got them varicose veins and they swell, make my legs swell and if I stand up so long it swells up." (R. 57).

After the hearing, the ALJ issued an opinion in August 2019, finding that Plaintiff had an RFC limited to modified light work, and that Plaintiff had no transferrable skills. Based upon these findings, the ALJ ruled Plaintiff disabled under rule 202.02 of the medical-vocational guidelines or "grids" beginning on May 15, 2019, when Plaintiff turned 55 years old and thereby qualified as an individual of advanced age. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. Prior to that date, however, the ALJ ruled that Plaintiff could perform light, unskilled work provided that Plaintiff have the opportunity to "alternate between sitting and standing up to once every half hour while continuing to work." (R. 34). The Appeals Council subsequently denied review (R. 7-9), and Plaintiff now seeks relief from this Court.

In her briefs, Plaintiff challenges the unfavorable portion of the ALJ's decision, in which the ALJ found that Plaintiff was not disabled prior to age 55. Plaintiff also argues that the Appeals Council erred by failing to remand in light of new evidence from a treating physician. Although the Appeals Council committed no error as to new evidence, it is not clear that substantial evidence supports the unfavorable portion of the ALJ's decision. Moreover, this Court cannot provide meaningful review because the ALJ did not off a clear articulation of the weight accorded to important medical evidence. For these reasons, and as discussed in greater detail below, it is recommended that this case be remanded to the Commissioner for a reevaluation of the evidence.

**STANDARD OF REVIEW**

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

**MEDICAL RECORD**

The available medical record begins in May 2014, when Plaintiff sought treatment for chronic lower back pain stemming, at least in part, from a motor vehicle accident that occurred in late 2013. (R. 337). Plaintiff was diagnosed with chronic lumbago and was instructed to seek pain-management care. (R. 339). Plaintiff was also diagnosed with bilateral forearm pain associated with "recurrent forearm growths," for which she was instructed to consult with a surgeon. (R. 339). For these symptoms, Plaintiff was instructed to treat with 325 mg of hydrocodone-acetaminophen or Norco. (R. 60-61, 339).

In June 2014, Plaintiff sought care from Dr. Rashmi Hooda, who diagnosed Plaintiff with hypertension and hyperlipidemia along with depressive disorder, which Plaintiff managed with a 50 mg prescription of Zoloft. (R. 344). Dr. Hooda also diagnosed Plaintiff with "pain in joint, lower leg," for which Dr. Hooda prescribed 50 mg of Tramadol to be taken once every 6 hours. (R. 344).

In July 2014, Plaintiff began treating with Dr. Patrice Boddie for bruising on the "right and left forearms as well as the left shoulder," along with associated mild pain. (R. 574). Plaintiff was instructed to perform "any aerobic activity at least 2.5 hours per week." (R. 575). In August 2014, Plaintiff returned to Dr. Boddie with complaints of pelvic pain and vaginal bleeding. (R. 568). A chest imaging study later obtained at the Oconee Regional Medical Center ("ORMC") in October 2014 revealed "no acute process" relating to congestive heart failure. (R. 335, 567).

Continued treatment with Dr. Boddie in 2015 focused on leg pain exacerbated by walking (R. 563), bilateral pelvic pain (R. 553), knee crepitus (R. 544, 555), and chest and abdominal pain. (R. 542, 558). Imaging studies of Plaintiff's chest, left femur and knee, and brain revealed no

certain etiologies to explain Plaintiff's symptoms. *See* (R. 540-41, 547, 550) ("no acute process"), (R. 549) ("No acute intracranial process").

Plaintiff's symptoms persisted into 2016, whereupon Dr. Boddie noted signs of bilateral knee crepitus. (R. 526, 531). Plaintiff sat for a battery of new imaging studies, including left knee and right tibia x-rays (R. 520-21), an abdominal CT scan (R. 522-23), chest and lumbar-spine x-rays (R. 516-17, 519), and sonographic studies of Plaintiff's legs that ruled out deep vein thrombosis. (R. 514-15, 518).

In July 2016, Dr. Andre Haynes performed a consultative examination study and found that Plaintiff "ambulates with a normal gait," did "not require the use of a handheld assistive device," was "stable at station and comfortable in the sitting and supine positions," had no tenderness or swelling of the lower extremities, and could "walk 50 feet without assistance." (R. 353-56). Based on these findings, Dr. Haynes concluded that Plaintiff was only mildly to moderately impaired in performing activities like walking, squatting, bending, stooping, lifting, and pushing and pulling heavy objects. (R. 357).

Later in 2016, and as noted by Dr. Boddie, Plaintiff's condition declined such that she reported "to the ED x 3 for the same complaint of leg pain." (R. 509). First, in August 2016, Plaintiff sought care at the ORMC for lower back pain and lower extremity pain and swelling, which symptoms were treated with an acetaminophen/codeine regimen. (R. 385-86). Second, in October 2016, Plaintiff returned to the ORMC for "bilateral lower leg pain and swelling x 1 week." (R. 366). Plaintiff reported that her pain was "usually controlled by Norco" at a 5-325 mg dosage, but that she had run out of the medication. (R. 366, 369). Third, Plaintiff sought care on Christmas Eve 2016 for bilateral radiating leg, hip, and lower-back pain that was not relieved upon treatment with Hydrocodone. (R. 438-39). Plaintiff was prescribed a 50 mg dosage of Tramadol and

instructed to follow up with an orthopedist. (R. 441). Notes from this period indicate that Plaintiff was to "keep your legs elevated when possible," (R. 405), and to "rest leg, avoid any walking or other strenuous activity." (R. 428). Explanations for Plaintiff's symptoms included "peripheral artery disease" (R. 415), "muscle strain, extremity," (R. 434), and "acute pain, uncertain cause." (R. 422).

Plaintiff began treating with Dr. Saqib Nazir the following year, in June of 2017. The record contains only three treatment records from Dr. Nazir, but they record Plaintiff's complaints of "back [and] leg pain," for which Dr. Nazir prescribed 50 mg of Ultram. (R. 500-01). Subsequently, in January 2019, Dr. Nazir provided a letter in which he stated that Plaintiff suffered from "persistent lower extremity edema" due to "multiple varicosities in the legs bilaterally," and which persisted "[d]espite regular use of Lasix." (R. 503). Dr. Nazir also stated that Plaintiff was "cane dependent for all ambulation," that she was "extremely limited in standing and walking capabilities due to her varicose veins," and that Plaintiff would need to "regularly recline and elevate the extremities to relieve ongoing edema issues." (R. 503).

In the interim – that is, between June 2017 and January 2019 – Plaintiff continued to seek periodic treatment at the ORMC for symptoms including chest pain, "chronic right lower extremity pain" (R. 475), left leg pain due to "bad veins" (R. 467), and "exacerbation of chronic leg pain from[] varicose veins," (R. 458), and "bilateral leg pain and swelling" caused by "multiple varicosities … to bilateral lower ext[remity]." (R. 443-44). Plaintiff was instructed to "keep your legs elevated as much as possible" (R. 446), and the record shows that Plaintiff treated with analgesics including Hydrocodone. (R. 449, 454).

**DISABILITY EVALUATION IN PLAINTIFF'S CASE**

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following findings in Plaintiff's case. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 1, 2014, her alleged onset date. (R. 32). At step two, the ALJ found that Plaintiff had the following severe impairments: "congestive heart failure, reduced vision, sciatica, varicose veins, osteoarthritis of the knees, degenerative disc disease, and obesity." (R. 32). At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 32-33). Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform light work with the following exceptions:

> [T]he claimant needs the opportunity to alternate between sitting and standing up to once every half hour while continuing to work. The claimant has reduced fine visual discrimination such that she can read 12 point type but not 10 point type. The claimant cannot tie small threads or read columns of small numbers.
>
> (R. 34)

Based on this RFC finding, the ALJ determined, at step four, that Plaintiff was unable to perform any of her past relevant work from 2005, which the ALJ categorized as "home health aide," a medium, semiskilled occupation. (R. 39, 243).

At step five, the ALJ made two determinations. Beginning on May 15, 2019, when Plaintiff turned 55, the ALJ concluded that a finding of disability was compelled by the medical vocational guidelines or "grids." (R. 40). Prior to this date, however, the ALJ determined that the grids did not compel a finding of disability, and that Plaintiff could have adjusted other work, namely, representative occupations such as garment sorter, marking clerk, and routing clerk, all light/unskilled positions. (R. 40). Accordingly, from the period lasting from October 1, 2014, to

May 15, 2019, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff raises two related arguments in support of her request for a remand. Primarily, Plaintiff argues that the ALJ erred by discounting the opinion of Dr. Saquib Nazir, a treating physician whose opinion suggests that Plaintiff was disabled even prior to age 55. Plaintiff also contends that the Appeals Council erred by failing to remand Plaintiff's case in light of a supplemental letter given by Dr. Nazir. *See* (R. 20-21).

The Appeals Council committed no error because Dr. Nazir's letter is cumulative. "The Appeals Council must consider new, material, and chronologically relevant evidence" presented to it, *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007), but Dr. Nazir's letter merely summarized medical evidence already in the record, or reiterated points previously made by Plaintiff at her administrative hearing. Because Dr. Nazir's letter provided no new or material evidence, the Appeals Council did not err by declining to review or remand Plaintiff's case in light of it. *See, e.g.*, *Washington v. Comm'r*, 806 F.3d 1317, 1321 n.6 (11th Cir. 2015) ("cumulative evidence is not new").

Dr. Nazir's letter does, however, succinctly raise many points that undermine the ALJ's decision regarding Plaintiff's functional capacity prior to age 55. In that way, the letter strongly supports Plaintiff's primary argument that the ALJ erred by discounting Dr. Nazir's opinion. For example, while the ALJ stated that he "would have expected to see some treatment from a vein specialist, orthopedist, or cardiologist" for Plaintiff's leg pain, (R. 37), Dr. Nazir's letter clearly explains that financial considerations limited Plaintiff's ability to obtain such treatment:

> To her credit [DTA] struggled to perform limited part time work simply to be able to afford rudimentary medical care and pay for her medically necessary prescription medication …. Lacking the financial or insurance resources to obtain needed specialized medical care is a far cry from not actually needing that specialized medical care.

(R. 20-21)

The same point was similarly evident from Plaintiff's testimony at her administrative hearing. (R. 58) ("I have to pay him, and I don't have the money"). Furthermore, it is not at all clear that Plaintiff's part-time, sedentary work, performed for one hour a day, three days per week, gives any support for the ALJ's conclusion that Plaintiff could perform a modified range of full-time, light work. Again, by Plaintiff's description, her part-time work consisted of sitting with cleaning supplies and keeping a log of the persons who took those supplies. (R. 55-56).

Regarding the medical evidence, Dr. Nazir asserted, in his letter, that the ALJ "mischaracterize[d] … the severity of [Plaintiff's] venous insufficiency." (R. 20). The medical record lends ample support to Dr. Nazir's assertion. For example, although he ALJ stated that "[o]verall, the claimant has had conservative treatment for her impairments," (R. 37), the record shows that Plaintiff at times treated with high-strength narcotics such as Norco, Ultram, Tramadol, and Hydrocodone.[1] It is also evident that medical professionals advised Plaintiff to limit her walking, and to elevate her legs whenever possible. (R. 405, 428, 446). These admonitions comport with Dr. Nazir's report that Plaintiff was "cane dependent for all ambulation," and that she needed to "regularly recline and elevate the extremities to relieve ongoing edema issues." (R. 503). Instructions to wear compression stockings comprised only one minor aspect of Plaintiff's management of her symptoms. Finally, while it is true, as the ALJ noted, that medical imaging

---

[1] *See, e.g.*, *Henry v. Comm'r*, 802 F.3d 1264, 1268 n.2 (11th Cir. 2015) ("Tramadol … is not consistent with the finding that Henry's treatment was conservative").

9

ruled out deep vein thrombosis as the probable cause of Plaintiff's symptoms, (R. 36), it is also true that physicians were unable to rule out other possible causes, such as peripheral artery disease. (R. 415). In any event, it is the functional effect of Plaintiff's symptoms, and not their mere etiology, that matters. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005).

In support of the ALJ's decision to discount Dr. Nazir's opinion, the Commissioner cites the opinion of a state agency medical reviewer, whose opinion alone cannot amount to substantial evidence. *Storey v. Berryhill*, 776 F. App'x 628, 635 (11th Cir. 2019). The Commissioner also cites the opinion of Dr. Andre Haynes, a consultative examiner, whose report does indeed suggest that Plaintiff had no edema, a normal gait, no need for a handheld assistive device when walking, and only a mild to moderate impairment of her ability to walk, squat, bend, stoop, and lift, and to push and pull heavy objects. (R. 354-57).

Although Dr. Haynes's report is supportive of the ALJ's opinion, a remand is nevertheless required for three reasons. First, Dr. Haynes's report, which was based upon a July 2016 examination, predates a clear deterioration in Plaintiff's condition as evidenced by Plaintiff's numerous appearances at the Oconee Regional Medical Center beginning in August 2016, along with Plaintiff's treatment with Dr. Nazir, which did not commence until June 2017. The ALJ neither acknowledged the decline in Plaintiff's condition nor attempted to place Dr. Haynes's report within the context of this decline. It is not clear, therefore, that the ALJ "considered [Plaintiff's] medical condition as a whole," as was required. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005).

Second, in discounting Dr. Nazir's opinion, the ALJ failed to follow the treating physician rule which requires the articulation of "good cause" to discount a treating physician's opinion. Such good cause is present "when the (1) treating physician's opinion was not bolstered by the

evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). The ALJ stated that he discounted Dr. Nazir's opinion because (i) "no treatment notes in the medical evidence … support his opinion," and (ii) [t]he claimant's treatment was conservative." As discussed above, these statements do not accurately reflect the medical record.

Third and finally, in weighing the medical evidence, the ALJ failed to "state with particularity the weight given to different medical opinions and the reasons therefore." *Winschel v. Commissioner*, 631 F.3d 1179 (11th Cir. 2011). In particular, the ALJ's assignment of "some weight" to Dr. Haynes's opinion offers no useful information. (R. 38). Nor is it clear from context what the ALJ meant. The ALJ may have found that Dr. Haynes's report either proposed too many functional restrictions (the ALJ noted that Plaintiff "continued to work part-time during this time and had only conservative treatment") or that it did not propose enough restrictions (the ALJ stated that medical imaging showed Plaintiff's limitations were "moderate at most," whereas Dr. Haynes stated Plaintiff was "mildly to moderately impaired" in certain functional activities). (R. 38).

If the ALJ intended to discount Dr. Nazir's opinion in favor of Dr. Haynes's opinion, the ALJ should have clearly articulated that ruling and should have offered some explanation for the apparent decline in Plaintiff's condition after Dr. Haynes issued his report. Because the ALJ failed in this regard, Plaintiff's case must be remanded to the Commissioner for a reevaluation of the medical evidence.

## CONCLUSION

After a careful review of the record, it is **RECOMMENDED** that this case be **REMANDED** to the Commissioner. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and

file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 14th day of October, 2021.

<u>s/ Charles H. Weigle</u>
Charles H. Weigle
United States Magistrate Judge